```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

LOUISIANA ENVIRONMENTAL                    CIVIL ACTION
ACTION NETWORK


VERSUS                                     NO: 09-7389


SUN DRILLING PRODUCTS                      SECTION: "J" (4)
CORPORATION
```

**ORDER AND REASONS**

Before the Court is Plaintiff Louisiana Environmental Action Network ("LEAN")'s **Motion for Summary Judgment (Rec. Doc. 31)**, Defendant Sun Drilling Products Corporation ("Sun Drilling")'s **Opposition (Rec. Doc. 37 )**, and Plaintiff's **Reply (Rec. Doc. 47)**. Oral argument took place on November 24, 2010, at 9:30 a.m., the Court taking this matter under advisement at that time. Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that Plaintiff's **Motion for Summary Judgment (Rec. Doc. 31)** should be **GRANTED**.

**PROCEDURAL HISTORY AND BACKGROUND FACTS:**

This suit against Sun Drilling is brought by LEAN as a citizen's suit authorized by the Federal Water Pollution Act, 33 U.S.C. § 1251 *et seq.,* also known as the Clean Water Act ("CWA"). LEAN is a Louisiana-based environmental watchdog non-profit and Sun Drilling is a company doing business in Louisiana. Sun Drilling employs 32 people at its facility in Belle Chasse,

1

Plaquemines Parish, Louisiana, where it manufactures drilling fluid specialty products, including drilling fluid lubricants, shale stabilizers, and de-greaser soaps. As part of its operation, Sun Drilling must dispose of process wastewater in compliance with standards and limitations established by its water discharge permit issued by the Louisiana Department of Environmental Quality ("LDEQ").

The complaint alleges that Sun Drilling violates limits set in its water discharge permit for biological oxygen demand, chemical oxygen demand, total suspended solids, and ethylbenzene. Sun Drilling discharges this polluted waste water approximately a quarter of a mile upstream from a source of Plaquemines Parish's drinking water.

In May of 2008, the LDEQ began an investigation of alleged violations by Sun Drilling of water regulations in Louisiana. The matter was turned over to the enforcement department of the LDEQ on February 26, 2009. Following the procedure of the CWA, Plaintiff filed its notice of intent to sue on July 23, 2009. The LDEQ issued a consolidated compliance order on September 9, 2009. The compliance order does not include any civil penalties. Plaintiff LEAN filed this law suit on November 19, 2009 for declaratory and injunctive relief and for civil penalties to redress Sun Drilling's ongoing violations of the CWA.

Plaintiff alleges that Defendant continues to breach the

compliance order it reached with the LDEQ. Plaintiff submitted the instant motion for summary judgment, claiming that Defendant is liable for more than 1,600 violations of the Clean Water Act and that LEAN has standing to bring this suit.

**DISCUSSION:**

### Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d 399.

If the dispositive issue is one on which the moving party

will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." Id. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See, e.g., id. at 325; Little, 37 F.3d at 1075.

**Liability**

Plaintiff argues that Sun Drilling is liable for more than 1,600 violations of the CWA. Plaintiff contends that when Sun Drilling discharges wastewater in excess of the effluent

4

limitations set in its Permit it violates the Clean Water Act. According to Plaintiff, by its own reports to LDEQ, Sun Drilling admits that it has exceeded its permit limits consistently for several pollutants since April 2008, and that it has continued these violations since LEAN filed this lawsuit.

Sun Drilling does not contest liability and admits violations of the CWA as alleged by LEAN. Thus, summary judgment is proper as to liability, if LEAN has proper standing to bring this suit.

**Standing**

As a corporation, LEAN relies on associational standing. For an association to have standing to bring suit on behalf of its members, its members must otherwise have standing to sue in their own right, the interests at stake must be germane to the organization's purpose, and neither the claim asserted nor the relief requested should require the participation of individual members in the lawsuit. <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Services, Inc.</u>, 528 U.S. 167, 181 (2000). LEAN argues that it has organizational standing as a representative of its members to bring this case because (1) the protection of the Mississippi River water quality is germane to its purpose, (2) neither the claims asserted nor the relief requested in this case require the participation of any of LEAN's members in this lawsuit, and (3) it has members whose interests in the Mississippi River have been

and will continue to be harmed by the polluted discharges from Sun Drilling's plant. LEAN asserts that its members have standing to sue in their own right because they satisfy the three-part "case or controversy" standing requirement of Article III. They can show they have: (1) suffered an injury in fact (2) that is fairly traceable to the challenged action of the defendant, and (3) it is likely that the injury will be redressed by a favorable decision. Id. at 180-81.

Sun Drilling opposes summary judgment on two grounds: traceability and redressability of the injury. Defendant argues that LEAN's civil action has not and will not have any effect on Sun Drilling's efforts to comply with its permit. First, Sun Drilling claims that it was already attempting to comply when LEAN filed suit. Second, Sun Drilling argues that any relief obtained here would be duplicative of any fines or injunctive relief imposed as a result of the LDEQ's actions and would not provide additional incentive to comply or redress the harm caused.  In support, Sun Drilling details many actions taken since 2008 to address the facility's non-compliance, including expert consultations, installation of water treatment equipment, implementation of new treatment strategies, and more.  Defendant argues that LEAN did not file its lawsuit until long after Sun Drilling became "motivated to achieve permit compliance." (Rec. Doc. 37, p. 12).  The LDEQ issued a Consolidated Compliance Order

and Notice of Potential Penalty to Sun Drilling on September 9, 2009. According to Sun Drilling, LDEQ's "standard practice" is to wait until a violating facility is in compliance before assessing penalties. Because the state law factors to be considered when determining an appropriate penalty are similar to the CWA factors, Sun Drilling implies that the result of the state action would be sufficient to redress any harm without involving this Court or the CWA.

Sun Drilling's argument that granting injunctive relief and imposing civil penalties does not meet the redressability requirement is flawed. Sun Drilling mentions the LDEQ's power to shut down the facility. However, Sun Drilling foresees that, as long as it makes good faith attempts to comply, it is unlikely to face injunctive action by the LDEQ. If Sun Drilling's assessment of LDEQ's standard practice is accurate, and Sun Drilling is never able to comply with the requirements of its permit, the LDEQ will never impose a penalty. This result would clearly be absurd and contrary to the purpose of the CWA. Therefore, permitting LEAN to pursue relief in this court, where injunctive relief is available, may indeed serve to redress the injuries alleged. As for civil penalties, the Supreme Court previously stated that "[t]o the extent that [civil penalties] encourage defendants to discontinue current violations and deter them from committing future ones, they afford redress to citizen plaintiffs

who are injured or threatened with injury as a consequence of ongoing unlawful conduct." <u>Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.</u>, 528 U.S. 167, 186 (U.S. 2000). Moreover, the civil penalties demanded by Plaintiff would have deterrent effect on "other permit holders." <u>Louisiana Environmental Action Network, Inc. v. Evans Indus. Inc.</u>, 1997 WL 824310, *3 (E.D. La. Sep. 30, 1997). Regardless of the impact of LEANS's action on Sun Drilling's compliance, other potential or current violators may be deterred by the prospect of facing claims under both state and federal law. Hence, Plaintiff satisfies the redressability prong of standing as to injunctive relief and civil penalties.

The main issue here is the question of traceability, or whether the generalized fears and assessments of layperson members are sufficient to support associational standing. Defendant argues that Plaintiff must show that a defendant has (1) discharged some pollutant in concentrations greater than allowed by its permit (2) into a waterway in which the plaintiffs have an interest that is or may be adversely affected by the pollutant and that (3) the pollutant causes or contributes to the kinds of injuries alleged by plaintiff. <u>Id.</u> at *2. According to Defendant, LEAN cannot satisfy the third prong of the test. Because the alleged pollutants are discharged into a large waterway, the Mississippi River, LEAN is required to show more

than the mere presence of the pollutants in the River to establish a link between the pollutants and the injuries claimed by its members. Defendant asserts that testimony of lay witnesses offered by Plaintiff fails to establish the requisite causal link.

In its Reply, Plaintiff argues that expert testimony is not necessary to prove standing in this case and that courts have found that members' affidavits and testimony alone showed reasonable concerns about the effects of the discharges, and therefore were sufficient to establish injury.

In addressing the traceability component of standing the Supreme Court previously stated that "[t]he relevant showing for purposes of Article III standing . . . is not injury to the environment but injury to the plaintiff. To insist upon the former rather than the latter as part of the standing inquiry . . . is to raise the standing hurdle higher than the necessary showing for success on the merits . . . ." Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 528 U.S. 167, 181 (U.S. 2000). In the same case the Supreme Court agreed with the district court that sworn statements by members of Plaintiff organization "adequately documented injury in fact." The Court emphasized that "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of

9

the area will be lessened' by the challenged activity." Id. at 183 (citing Sierra Club v. Morton, 405 U.S. 727, 735 (1972)). The Fifth Circuit also recognized that "the 'fairly traceable' element does not require that the plaintiffs 'show to a scientific certainty that defendant's effluent, and defendant's effluent alone, caused the precise harm to the plaintiffs.'" Save Our Cmty. v. EPA, 971 F.2d 1155, 1161 (5th Cir. 1992) (quoting Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals, Inc., 913 F.2d 64, 72 (3rd Cir. 1990); Natural Resources Defense Council, Inc. v. Watkins, 954 F.2d 974, 980 n.7 (4th Cir.1992)). Further, where "[a]ll of the affiants expressed fear that the discharge . . . will impair their enjoyment of these activities because these activities are dependent upon good water quality," the Fifth Circuit found that those "affiants have a 'direct stake' in the outcome of this lawsuit." Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc., 73 F.3d 546, 556 (5th Cir. 1996).

As Plaintiff correctly points out, the Fifth Circuit case relied upon by Defendant is distinguishable. In Friends of the Earth v. Crown Central Petroleum Corp., 95 F.3d 358 (5th Cir. 1996), the court found that Plaintiff lacked standing to sue under the CWA about discharges to a creek because none of Plaintiff's members used that creek. Plaintiff's witnesses were people "who birdwatch and fish at a lake some 18 miles and three

tributaries from the source of unlawful water pollution." <u>Id.</u> at 359 (emphasis added).

However, in the case at bar, LEAN members' drinking water supply is a quarter mile downstream from the discharge at issue. Sun Drilling's permit states it discharges into the Mississippi River from its plant at 503 Main Street in Belle Chasse. The Parish draws water from a point on the same bank of the Mississippi River a quarter mile downstream of Sun Drilling's discharge. Sun Drilling admits to discharging illegal amounts of ethylbenzene, total suspended solids and other pollutants. Evidence demonstrates that ethylbenzene is a "toxic pollutant" under the CWA and has detrimental effects on human health and the environment. LEAN member Mark Magee's concerns about his water source are reasonable, which means that his injury is fairly traceable to Defendant's illegal discharges. LEAN member Gary Muth is a commercial fisherman and his injuries are likewise traceable to Sun Drilling's illegal discharges. Sun Drilling illegally discharges into the Mississippi River pollutants that threaten to impair the waterbody, which prevents Mr. Muth from fishing. Consequently, Plaintiff has met its burden in establishing standing.

Accordingly, **IT IS ORDERED** that Plaintiff's **Motion for Summary Judgment (Rec. Doc. 31)** is **GRANTED** as to liability and as to standing. **IT IS FURTHER ORDERED** that an in-chambers status

conference is hereby **SET** for <u>**Thursday, December 16, 2010 at 2:00 p.m.**</u> to discuss the imposition of civil penalties and injunctive relief.

New Orleans, Louisiana, this 1st day of December, 2010.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE